Filed 1/20/15  P. v. Muriel CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049226 |
| v. | (Super. Ct. No. 06WF3139) |
| ROBERT ISMAEL MURIEL, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, William R. Froeberg, Judge.  Affirmed.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Robert Muriel appeals from a jury verdict finding him guilty of attempted murder, aggravated assault, shooting at an inhabited dwelling, and street terrorism. He has one complaint to make about his trial: The court abused the discretion afforded to it under Evidence Code section 352[1] by allowing one of the witnesses to testify about his fear of retaliation for his testimony and the facts underlying this fear. According to Muriel, this evidence was unduly prejudicial and resulted in a guilty verdict, which he would not otherwise have suffered.

We affirm. The trial court properly limited the witness' statements regarding his fear of retaliation by immediately instructing the jury that it was to consider this testimony only as it bore on the witness' credibility and for no other purpose. We assume that the jury followed this instruction. Moreover, even if we assume the jury disregarded the court's instruction, Muriel has not explained how this testimony could have affected the verdict so that the outcome of the trial would have been different.

## FACTS[2]

On September 10, 2006, 14-year-old Jesse Niutapuai was standing in the front yard of his house in Westminster with his cat when a group of young Hispanic males walked by. One of them asked Jesse where he was from.[3] Unfamiliar with the implication of the question, Jesse laughed. The group began angrily yelling "West Trece," the name of a Hispanic gang in Westminster. At this point, Jesse realized trouble was brewing, so he went inside the house to summon his family. Apparently unbeknownst to the gang members, Jesse was the youngest, and at 190 pounds the smallest, of five Samoan brothers, all of whom eventually came out of the house to deal

---

[1] All further statutory references are to the Evidence Code unless otherwise indicated.

[2] We recite the facts in the light most favorable to the judgment. (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

[3] Asking people where they are "from" in gang parlance is not a demand for identification of their home towns but rather of their gang affiliation.

2

with the troublemakers.  At the sight of the three older Niutapuai brothers, the gang members sensibly began running away.  The three older brothers chased the group down the street and caught up with the biggest (and presumably the slowest) gangster, whom they proceeded to beat up.  The other members of the gang left their hapless confederate to his fate.  When he finally escaped the Samoans, he ran to where his erstwhile friends were standing, out of harm's way, and began punching them.

Some time later, a larger group approached the Niutapuai house yelling "West Trece," among other things.  Muriel was among this second group.  One of the group took out a pipe and either tried to hit Jesse with it or threw it toward the house.  One of the Niutapuai brothers threw a barbell at the group.  Muriel pulled out a gun and fired two shots at the brothers.  No one was injured.

Muriel was ultimately charged with attempted murder, aggravated assault, shooting at an inhabited dwelling, and street terrorism.[4]  He was also charged with enhancements for gang benefit and for use and discharge of a firearm.

Muriel was tried in 2008.  The jury hung.  He was retried in July 2013.  He testified that he was not the person who had shot at the Niutapuai brothers in September 2006, but the jury found him guilty of attempted murder, aggravated assault, shooting at an inhabited dwelling, and street terrorism.  The jury also found the gang benefit, use of firearm, and discharge of firearm enhancements to be true.

During the second trial, Jesse's brother Justin, next in age to Jesse, testified about the events of September 2006.  He also testified that about a year later, in 2007, a group of about 15 "guys" got into a brawl with him and his brothers at the Niutapuai house.  The three older brothers were stabbed, and the driver of a vehicle tried to run over Jesse.  The following night there were gunshots outside the house, and Justin found a

---

[4] An additional charge of carrying a loaded firearm in public was dismissed in 2011.

bullet hole in his sister's car. Justin testified these events made him nervous or afraid to testify against Muriel.[5]

Immediately after Justin finished testifying on this subject, the judge gave a limiting instruction: "Ladies and gentlemen, the evidence concerning the incidents that occurred a year later, the stabbings and shootings, were offered for the limited purpose of judging the credibility of that witness, that is, his fear of testifying or retaliation. It is relevant for that purpose only. It is not to be attributable to Mr. Muriel in the least. It is only as to this witness' credibility."

## DISCUSSION

Muriel has identified one issue on appeal. He asserts that the court erred in allowing Justin to testify about his fear of retaliation stemming from the stabbings and shootings in 2007, because the testimony was more prejudicial than probative under section 352.[6] Muriel claimed that even though he was in jail at the time, the jury would think he was responsible for the incidents. This would make the jury more likely to convict him. We review the trial court's rulings based on section 352 for abuse of discretion. (*People v. Linton* (2013) 56 Cal.4th 1146, 1182.)

"'Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible. [Citations.] An explanation of the basis for the witness's fear is likewise relevant to [his or] her credibility and is well within the discretion of the trial court. [Citations.]' [Citations.]" (*People v. McKinnon* (2011) 52 Cal.4th 610, 668 (*McKinnon*).) "[T]here is no requirement to show threats against the witness were made by the defendant

___

[5] Muriel made a motion in limine under section 352 to exclude evidence of these retaliatory incidents, which the court took under submission. Justin was subsequently examined under section 402, and the court ruled that he could testify about his fear of retaliation, with a limiting instruction.

[6] Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

4

personally or the witness's fear of retaliation is 'directly linked' to the defendant. [Citation.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1142 (*Guerra*), disapproved on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Threats of retaliation can be relevant to a witness' credibility in at least two ways. First, they can explain why a witness may be hesitant in his or her testimony or may be backpedalling from earlier statements. (See *Guerra, supra,* 37 Cal.4th at p. 1142.) Muriel correctly observes that this was not the case here. Justin testified in court consistently with the statements he had given to police.

But threats of retaliation can affect credibility in another way, a way Muriel ignores. "A witness who testifies despite fear of recrimination of *any* kind by *anyone* is more credible because of his or her personal stake in the testimony." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1368.) Justin's willingness to testify in spite of the subsequent actions of the West Trece gang very likely would have bolstered his credibility with the jury. This is an entirely legitimate use of testimony regarding threats of retaliation.

As to whether the evidence was unduly prejudicial, as soon as Justin finished testifying on direct examination, the judge gave the jury a limiting instruction, a fact omitted from Muriel's opening brief. The court admonished the jury that the evidence of the stabbings and shootings a year later was "offered for the limited purpose of judging the credibility of that witness. . . . It is not to be attributable to Mr. Muriel in the least. It is only as to this witness' credibility."

The defendant in *McKinnon* made an argument identical to Muriel's with respect to evidence that a witness had been threatened with retaliation if he testified against the defendant, notwithstanding a limiting instruction far less favorable than the one given in this case. "Defendant finally argues that evidence of [the] threat should have been excluded as unduly prejudicial under . . . section 352 because it posed a

5

substantial danger the jury would speculate that defendant authorized the attack and threat. To the contrary, . . . the trial court admonished the jurors that the evidence was admitted as bearing on [the witness'] credibility, and that there was no evidence of defendant's involvement in the threat and attack on [the witness]. Defendant nonetheless contends the admonition was inadequate because it did not instruct the jurors that they could not infer defendant was involved in the threat and attack, that they could not consider the evidence in any way against defendant, and that they could consider the evidence to determine only whether [the witness] feared testifying because he was threatened. His contentions lack merit. [¶] We 'credit jurors with intelligence and common sense' [citation] and presume they generally understand and follow instructions [citation]. We think it highly unlikely the jurors understood they could infer defendant authorized or orchestrated the threat and attack, because there was no evidence from which the jurors reasonably could draw this inference, and they were instructed evidence of his involvement did not exist. Further, because the trial court instructed them the evidence was admitted as bearing on [the witness'] state of mind and demeanor in testifying, the jurors also understood from the instruction that, logically, the evidence was not relevant to [the witness'] credibility unless they found the preliminary fact that he was afraid to testify because he was threatened and attacked." (*McKinnon, supra,* 52 Cal.4th at pp. 670-671.) The *McKinnon* court found that the trial court had not abused its discretion in admitting the evidence. (*Id.* at p. 671.)

In this case, the trial court admonished the jury that they could not consider the evidence as implicating Muriel in any way and they could consider the evidence only as it bore on Justin's credibility. The argument in Muriel's opening brief tacitly assumes that the jury ignored the court's limiting instruction and attributed the shootings and

stabbings of September 2007 to him.[7]  This is not the assumption we make.  On the contrary, we assume the jury followed directions.  "The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions."  (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)  That assumption vitiates Muriel's argument.

In concluding the evidence was properly admitted, we acknowledge the fact Muriel was also charged with gang-related activities and enhancements, so his membership in West Trece was at issue.[8]  The prosecution's gang expert testified at some length about how a gang would react when one of its members was in jeopardy or had been treated with what the gang regarded as disrespect.  Justin's retaliation testimony – if applied to Muriel despite the court's instruction – could have bolstered the People's evidence of his gang membership.  But the evidence of Muriel's gang membership was overwhelming; it certainly did not hinge on whether or not he ordered West Trece members to intimidate witnesses from his jail cell a year after his arrest.

Muriel stated only that admitting the retaliation evidence "would have caused some or all of the jurors to prejudge [him], would confuse the trial issues, and would mislead the jurors."  But he does not explain how the issues would be confused or how the jurors would be misled.  As for prejudging him, the court specifically instructed the jurors *not* to do this, at the beginning of the case and before every recess, as required by Penal Code section 1122, subdivision (b).  We assume the jurors followed instructions.  (See *People v. Cook* (2006) 39 Cal.4th 566, 610.)

---

[7]    In his reply brief, Muriel acknowledged the limiting instruction – because it was mentioned in the respondent's brief – but asserts that the jury must have attributed the subsequent events to him notwithstanding the instruction.

[8]    Muriel testified on direct examination that he had joined West Trece at age 11, but he began working, married, had children, and moved away from Westminster, cutting down on his time with the gang.  He associated with West Trece gang members because they were family members and childhood friends.  On cross-examination, he admitted "I'm a gang member, yes."

7

Finally, Muriel asserts that the case was so close that Justin's retaliation evidence must have swung the verdicts to guilty, despite the court's instruction, citing the numerous questions the jury posed after deliberations had begun. The jurors did indeed bombard the judge with written questions from the jury room, so much so that he finally called them into open court to discourage such questions. But none of these questions had anything to do with Justin's retaliation evidence or even with Muriel's identity as the shooter. They dealt with the application of aiding and abetting, the intent element of attempted murder, which verdicts had to be unanimous, the relationship between attempted murder and the lesser offense of attempted manslaughter, and the discharge of a firearm enhancement. The questions do not suggest that the case was a close one as to Muriel's guilt, only that the jury was conscientious, wrestling with some of the finer points of criminal law, and had definitely *not* prejudged Muriel based on the events he contends prejudiced his trial.

## DISPOSITION

The judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.

8